[Civ. No. 8374. Third Dist. Sept. 30, 1954.]

MAZIE ERICKSON, as Executrix, etc., Appellant, v. CLYDE D. BOOTHE, Respondent.

Lafayette J. Smallpage, Harold J. Willis, Preston, Braucht & George for Appellant.

Taylor, Taylor & Taylor for Respondent.

PEEK, J.—This case is before this court for the fifth time —in this instance by virtue of plaintiff's appeal from a judgment in favor of defendant awarding him certain amounts representing the sums due him for the period he was dispossessed by plaintiff of the ranch involved in the litigation.

Originally plaintiff by an action for declaratory relief sought to determine whether defendant as lessee had effectively exercised an option to "re-lease" the property under the terms of a lease contract. A judgment in favor of plaintiff, as executrix, was reversed on appeal. (*Erickson* v. *Boothe,* 79 Cal.App.2d 266 [179 P.2d 611].) As executrix she thereupon filed a dismissal of that action, and Boothe, who also had sought declaratory relief, moved the trial court for judgment in accordance with the decision on appeal. The dismissal was set aside and, after a hearing on Boothe's motion, judgment was entered on October 3, 1947, declaring defendant had effectively exercised the option and that he was entitled to be restored to possession of the property. The court further ordered that he was additionally entitled to an accounting from plaintiff, as executrix, for her use of the premises during the period he was dispossessed. Plaintiff's appeal from this judgment was summarily dismissed by the Supreme Court on the ground that it was merely interlocutory and therefore was not appealable. (*Erickson* v. *Boothe,* 35 Cal.2d 108 [216 P.2d 454].) Subsequent to the first action, plaintiff procured distribution of the estate to herself as sole legatee. Boothe then moved the trial court to compel plaintiff, individually and as sole distributee of the estate, to continue the action and be bound as an individual by the aforementioned judgment of the trial court. The trial court granted the motion for substitution, which order was affirmed on appeal. (*Erickson* v. *Boothe,* 90 Cal.App.2d 457 [203 P.2d 122].)

On June 15, 1950, on motion of defendant, the trial court ordered plaintiff to show cause why an order should not be made directing her to account and pay to defendant certain specified sums, together with interest, for the value of her use and occupation of the premises. Plaintiff's motions to vacate the order of substitution and for leave to file a supplemental complaint were denied. Following a hearing on the accounting,

the cause was submitted, and judgment was entered in favor of defendant. It is from that judgment that the within appeal has been taken, and from the order of November 1, 1948, substituting Mazie Erickson, individually, for Mazie Erickson, as executrix.

Appellant first contends that if there is any liability on her part to respondent, a portion thereof must be cast upon the estate of Carlon of which she was the sole distributee. This amounts to nothing more than an attack on the validity of the order of substitution, affirmed on appeal (90 Cal.App.2d 457), and by virtue of which she is bound as an individual by the judgment of October 3, 1947. Accordingly, the propriety of said order is not now open to question, and the issue of appellant's individual liability is res judicata. (*Gore* v. *Bingaman,* 20 Cal.2d 118, 121 [124 P.2d 17]; *Cafe Apollo Co.* v. *Anselm,* 70 Cal.App.2d 654 [161 P.2d 473].)

Appellant next contends that it was error for the trial court to deny her motion for leave to file a supplemental complaint to recover, and offset against the rents, issues and profits, damages for alleged waste committed by the respondent during his period of occupancy of the premises.

The office of a supplemental complaint is to bring to the notice of the court and opposing party "facts material to the cases occurring after the former complaint . . ." (Code Civ. Proc., § 464) which would affect the rights asserted and the judgment to be rendered. Also it must be in furtherance of, and consistent with, the original action. (*Stephani* v. *Abbott,* 137 Cal.App. 510, 516 [30 P.2d 1033].) "Such a right," the court said in the early case of *Gleason* v. *Gleason,* 54 Cal. 135, "can be exercised only with reference to matter which may be consistent with, and in aid of the case made by the original complaint, and which occurred between the time of filing the original complaint and the trial or judgment in the action." The motion to file such pleadings is addressed to the sound legal discretion of the trial court, and its ruling thereon will not be disturbed on appeal in the absence of a showing of a manifest abuse of that discretion. (*Ross* v. *McDougal,* 31 Cal.App.2d 114 [87 P.2d 709].)

Here the original complaint sought declaratory relief concerning possession of the premises in question. It was not filed until after defendant was out of possession. Obviously then any commission of waste by him would of necessity have been during his possession. Hence, the supplemental complaint

could not have related to material facts "occurring after the former complaint" (Code Civ. Proc., § 464) or to facts occurring "between the time of filing the original complaint and the trial or judgment." (*Gleason* v. *Gleason, supra.*)

The principle is well settled that after reversal of a judgment under which a party obtained possession he is in the position of a trustee of the property and the one so dispossessed is ". . . entitled to restitution of all the things lost by reason of the judgment in the lower court . . . where justice requires it." (*Ward* v. *Sherman,* 155 Cal. 287, 291 [100 P. 864].)

Applying the rule above enunciated to the facts in the present case it appears first that plaintiff's possession which continued until 1949 was not tortious; second, that she held the same as trustee for Boothe; and, third, that as trustee she was obligated to account to and be chargeable for all things lost by him by reason of his dispossession under the erroneous judgment.

It necessarily follows that the judgment ordering an account (from which this appeal was taken) was proper. Thus the only question remaining relates to the measure of plaintiff's liability as applied by the trial court.

This court cannot agree with plaintiff's contention, nor do we understand the cases cited by her to so hold, that her liability is limited to an amount equal to the difference between the money received from her husband for the use of the property and the rentals which defendant was obligated to pay under the terms of his contract. In this she relies strongly upon the case of *City of Oakland* v. *Buteau,* 219 Cal. 745 [29 P.2d 177].

While it is true that restitution may call for mere restoration of the premises or property (*Ward* v. *Sherman, supra*) or the reasonable value of the use thereof (*Oakland* v. *Buteau, supra*), those cases do not establish a rule limiting a party's recovery to the matters therein discussed.

It is exceedingly difficult to follow plaintiff's contentions as to this phase of the case. The portion of her accounting to the trial court with which we are here concerned shows a charge against herself of the rent collected and credits to herself in the amounts Boothe was obligated to pay under his contract. The small difference is the amount she now owes to Boothe. However, in her reply brief she states that she agrees "thoroughly with the rule" stated in *Gaver* v. *Early,* 58 Cal.App. 736, 737 [209 P. 394], and relied upon by respondent, that ". . . it is settled law that a violation by a

trustee of a duty which equity lays upon him, whether willful and fraudulent or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust (3 Pomeroy's Equity Jurisprudence, § 1079), and he may be charged with rents, profits, interest, income, proceeds of sales, and the like, which he never in fact received, but which he might and should have received by the exercise of due and reasonable care, diligence, and prudence in his modes of dealing. (Pomeroy's Equity Jurisprudence, § 1070.)'' But she contends this rule means ''the operation or the rents of the property by itself,'' and she has chosen the latter alternative. Furthermore, she says the court has allowed Boothe speculative profits on a hypothetical herd of cattle.

An identical contention was made in a recent case before this court. (*Stockton Theatres, Inc.* v. *Palermo*, 121 Cal. App.2d 616, 622 [264 P.2d 74].) There the party who had gone into possession of a theater under a judgment later reversed, contended that he had only taken over the real property and that any recovery by the ousted party should have been limited to the use value of the property less the agreed rental therefor.

Although plaintiff was guilty of no wrongdoing when she retook the property, she knew that judgment was not final; she knew that if the appeal were successful she would be subject to an accounting and full restitution.

█ The record shows that under a verbal contract plaintiff's husband acted as her agent and general business manager. In that capacity he not only ran his own cattle, for which he paid the rents for which plaintiff accounted, but he also grazed cattle owned by plaintiff. According to plaintiff's husband he ran on the average about 200 head of cattle which was what the ranch would carry. Boothe, however, testified he averaged 300 head when he was in possession. Both of the parties were shown to be in the cattle business. Neither was in the mere business of the renting or subrenting of pasture land as such. They both grazed cattle on such lands for the purpose of realizing a profit as reflected in the cattle. The use of the land and its improvements for that purpose was as much a business as was the use of the land and the improvements for the business of conducting a theater which was the situation in the Stockton Theatres case. The fundamental purpose in each enterprise was to realize profit from the use of the property in the particular manner to which it was best adapted. In each instance it was the loss of the business and

the business opportunity which plaintiff must restore monetarily to defendant.

Paraphrasing the summation of this question in the Stockton Theatres case, the fundamental purpose of the court in responding to the demand for restitution was to do equal and exact justice insofar as that could be done to Boothe who, by judicial error, had been deprived of his property, his business and his business opportunity. Hence, in view of the record before us, we cannot say that the means adopted, that is, the accounting for the profits of the cattle business, was not warranted. On the contrary, it would appear that no less a measure of recovery would have been responsive to the just demands of Boothe.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.